THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SIXTY-01 ASSOCIATION OF APARTMENT OWNERS,<br><br>Plaintiff,<br><br>v.<br><br>PUBLIC SERVICE INSURANCE COMPANY, *et al.*,<br><br>Defendants. | CASE NO. C22-1373-JCC<br><br>ORDER |

This matter comes before the Court on Plaintiff's motion to compel (Dkt. No. 156). Having thoroughly considered the parties' briefing and the relevant record, and finding oral argument unnecessary, the Court GRANTS in part and DENIES in part the motion for the reasons explained herein.

I.  **BACKGROUND**

Plaintiff, a non-profit corporation, is the owners' association for a condominium complex in Redmond, Washington. (*See* Dkt. No. 84 at 4.) It discovered water intrusion damage throughout the complex and later sent notices of loss to its insurers—this included Public Service Insurance Company ("PSIC"). (*See id.* at 5, Dkt. No. 84-2.) In response, PSIC retained attorneys Patrick Fredette and Kevin Hansen of McCormick Barstow LLP (hereafter referred to as "McCormick Barstow"). (*See* Dkt. No. 158 at 3.) McCormick Barstow insists it was retained

1    solely to provide coverage advice. (*See* Dkt. No. 160 at 2.) However, its communications with
2    Plaintiff's counsel during the adjustment process suggest otherwise. (*See, e.g.*, Dkt. No. 159-3.)
3    Nevertheless, based in part on McCormick Barstow's advice, PSIC denied coverage. (*See* Dkt.
4    Nos. 42-12, 84-4, 161 at 5-6.) In response, Plaintiff filed this case, which includes causes of
5    action for negligent and bad faith claims handling. (*See* Dkt. No. 84 at 8–11.)

6            As part of the discovery process, PSIC produced the claim file, (Dkt No. 157-2), and
7    asserted attorney-client privilege and/or work-product doctrine protections for 709 entries
8    contained within a privilege log.[1] (*See* Dkt. No. 157-1.) Because several entries seemingly refer
9    to communications regarding the factual merits of the claim, *e.g.*, reviewing documents, claim
10   analysis, discussing expert opinions, and "draft coverage analysis" written *immediately before*
11   the denial letter (which is coincidentally similar in length to the supposedly privileged
12   document), Plaintiff believes McCormick Barstow provided claim handling services to PSIC—
13   *i.e.*, services outside of what would be required solely of coverage counsel. (*See* Dkt. Nos. 156 at
14   2, 5; 157-1 at 2, 10, 23, 28, 29, 47.) If true, according to *Cedell v. Farmers Ins. Co. of*
15   *Washington*, that would invalidate the attorney-client privilege which may otherwise apply. *See*
16   295 P.2d 239, 246 (Wash. 2013).

17           Following an unsuccessful meet and confer to resolve their impasse regarding production
18   of the documents represented by the privilege log entries, (Dkt. No. 157-5 at 2), Plaintiff moves
19   to compel the production of 438 of the entries or, at a minimum, *in camera* review of those
20   entries. (*See* Dkt. No. 156 at 3.) Plaintiff also asks the Court to order McCormick Barstow
21   attorneys to sit for a deposition regarding the nature of their engagement. (*Id.* at 12–13.) In
22   opposing Plaintiff's motion, PSIC argues that *Cedell* does not apply here and, even if it does,

---

[1] This includes generic log entries referencing Mr. Fredette and Mr. Hansen's "coverage and claim analysis," (Dkt. No. 157-1 at 2), communications regarding "expert analysis and opinions," (*id.* at 23, 39), discussions regarding "HOA documents," (*id.* at 28), and e-mails regarding PSIC's "coverage position and advice of counsel," (*id.* at 47).

many of the entries at issue either reference documents or involve communications made in anticipation of litigation. (Dkt. No. 158 at 7–13.) Thus, they are protected by the work-product doctrine. (*Id.*)

## II. DISCUSSION

### A. Legal Standard

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). If requested discovery is withheld inappropriately or not answered, the requesting party may move for an order compelling such discovery. Fed. R. Civ. P. 37(a)(1).[2] And while the Court strongly disfavors discovery motions, if needed, it has broad discretion to fashion relief in accordance with such a motion, including to compel disclosure of discovery. *Phillips ex rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002). Fundamentally, in cases involving insurance bad faith claims, two limitations control a claim file's discoverability—attorney-client privilege and the work-product doctrine. *See MKB Constructors v. Am. Zurich Ins. Co.*, 2014 WL 2526901, slip op. at 8 (W.D. Wash. 2014).

### B. Attorney-Client Privilege

Attorney-client privilege protects confidential disclosures made to obtain legal advice, as well as the attorney's resulting advice. *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009). However, since *Cedell*, 295 P.2d at 246, its application in insurance bad faith claims is severely limited. That is because an insurer has a quasi-fiduciary duty to investigate and adjust their insured's claim in good faith. *Id*. And proving that an insurer breached that duty requires access to the insurer's claim file; therefore, an insurer's communication relating to quasi-

---

[2] On a motion to compel, the movant must demonstrate that "the information it seeks is relevant and that the responding party's objections lack merit." *Hancock v. Aetna Life Ins. Co.*, 321 F.R.D. 383, 390 (W.D. Wash. 2017).

fiduciary duties (*i.e.*, claim adjustment) is discoverable, even if performed by counsel. *Id.* However, attorney-insurer communication made outside of this role retains its privilege. *Id.*

### 1. PSIC's Call for a Blanket *Cedell* Exception is Unfounded

PSIC argues *Cedell* does not apply here because Plaintiff's counsel's conduct during the claim adjustment phase diminished the quasi-fiduciary relationship. (Dkt. No. 158 at 9.) To support that assertion, PSIC correctly notes that underinsured motorist (UIM) claims are exempted from *Cedell* treatment because the structure of UIM claims are, by their nature, adversarial. (*Id.* at 8.) PSIC then points to several supposedly "adversarial" e-mails the parties exchanged during the adjustment process. (*Id.*)

In the e-mails, the parties discuss claw back and tolling agreements—each of which would help preserve Plaintiff's right to sue. (*See* Dkt. No. 159-3 at 13.) Plaintiff refused to relinquish relevant files unless PSIC signed the tolling agreement. (*Id.* at 12.) During these exchanges, Plaintiff's counsel accused PSIC of violating its duty of good faith. (*Id.* at 4.) PSIC asserts that when an opposing counsel acts as such, *i.e.*, threatens litigation during the claim adjustment process, the insurer-insured relationship becomes sufficiently adversarial, like a UIM claim, so as to render *Cedell* inapplicable. (Dkt. No. 158 at 9.) The Court disagrees.

As a threshold matter, PSIC points the Court to no controlling authority for this proposition.[3] In fact, a review of the cases PSIC cites—as well as other cases applying *Cedell*—confirm that the only currently recognized exception to *Cedell* are UIM claims. *See Barry v. USAA*, 989 P.2d 1172, 1176 (Wash. Ct. App. 1999) (noting that Courts "have good reason to treat first-party bad faith claims involving the processing of UIM claims differently" than non-UIM claims); *see also Cedell*, 295 P.3d at 245 (same). Regardless, the Court concludes that such an exception should not apply here for at least two reasons.

---

[3] Specifically, that the "adversarial" nature *of counsel*, rather than the nature of *the claim (i.e.,* whether the claim is UIM or not), controls whether *Cedell* is applicable.

First, it would frustrate the balance struck in *Cedell*. There, the court recognized "implicit in an insurance company's handling of a claim is litigation or the threat of litigation that involves the advice of counsel." *Id.* But it declined to create a blanket privilege for insurer-attorney communications in bad faith claims because imposing such a broad exception would unreasonably obstruct "discovery of meritorious claims and conceal unwarranted practices." *Id.* at 244-45. This is why that court limited its exception to UIM claims. *Id.* at 245.

Second, UIM and non-UIM claims are structurally distinct. In UIM claims, the insurer steps outside its typical quasi-fiduciary role and into the shoes of the tortfeasor, *i.e.*, the other motorist. *See Barry*, 989 P.2d at 1176. As a result, "the insurer may defend as the tortfeasor would defend and is entitled to counsel's advice in strategizing the same defenses that the tortfeasor could have asserted." *Richardson v. Gov't Emps. Ins. Co.*, 403 P.3d 115, 122 (Wash. Ct. App. 2017) (internal quotation marks and citations omitted). A UIM claim is inevitably adversarial—like if it was between the insured and the tortfeasor. *See Barry*, 989 P.2d at 1176. In contrast, in a traditional first-party insurance dispute, the insurer does not step outside its quasi-fiduciary role, regardless of how aggressively the insured pursues its coverage options. *See id.; see also Tank v. State Farm Fire & Cas. Co.*, 715 P.2d 1133, 1136 (Wash. 1986) ("an insurer must deal fairly with an insured, giving equal consideration *in all matters* to the insured's interests.") (emphasis in original).

Hence, the Court declines to create apply a blanket *Cedell* exception here.

    2.    <u>It Appears McCormick Barstow Engaged in Some Quasi-Fiduciary Activities</u>

Quasi-fiduciary duties include investigating facts to reach a coverage decision—as opposed to applying facts to the relevant law. *Cedell*, 295 P.3d at 247; *Anderson v. Country Mut. Ins. Co.*, 2014 WL 4187205, slip op. at 3 (W.D. Wash. 2014). But to the extent the same attorney acts in *both* capacities—that of coverage counsel and as a quasi-fiduciary—the attorney-client privilege is waived, at least to the extent counsel's coverage determination implicates

information obtained through their quasi-fiduciary role. *See Palmer v. Sentinel Ins. Co. Ltd,* 2013 WL 12124516, slip op. at 2 (W.D. Wash. 2013).[4]

While McCormick Barstow denies engaging in claim adjustment tasks, (*see* Dkt. Nos. 159 at 5, 160 at 4), some of the log entries suggest otherwise. For example, McCormick Barstow sent e-mails to PSIC regarding "expert analysis and opinions" and a "draft expert report," (Dkt. No. 157-1 at 22, 23, 39), along with "HOA documents," (*id.* at 28). These appear investigatory in nature.

Nor are McCormick Barstow's declarations in support of PSIC's opposition brief helpful to PSIC here, as some of the descriptions of the work performed suggest that the withheld documents relate to quasi-fiduciary activities. (*See, e.g.*, Dkt. No. 160 at 2 ("advice regarding obtaining evidence and retaining appropriate experts to evaluate causation issues and an evaluation of its liabilities under the policy . . . and based on the facts of the loss."); *id*. at 3-4 (discussing with expert to "evaluate the relevant factual context while preparing its analysis of the PSIC policies' coverages"); *see also* Dkt. No. 159 at 4 (communicating with PSIC's expert "with respect to his opinions and evaluations regarding certain documents and materials received from the Association's counsel related to the types and mechanisms of damage at the insured property."). These are similar to tasks found to be investigatory in nature. *See Gamble v. State Farm Mut. Auto. Ins. Co.,* 2020 WL 4193217, slip op. at 3 (W.D. Wash. 2020) (obtaining an expert opinion); *Perez v. Am. Fam. Ins. Co.*, 2021 WL 928180, slip op. at 4 (W.D. Wash. 2021) (same); *Water's Edge v. Affiliated FM Ins. Co.*, 2022 WL 3054209, slip op. at 3 (W.D. Wash. 2022) (drafting a denial letter).

---

[4] Also worth noting is that, when determining whether insurer-attorney communications during the claim adjustment process are privileged, courts presume no privilege exists—unless the insurer can show otherwise. *Cedell,* 295 P.3d at 246.; *Anderson*, 2014 WL 4187205 at 3. In addition, when a court is unable to distinguish which role the attorney acted in, the court may turn to *in camera* review. *See, e.g., Barge v. State Farm Mut. Auto. Ins. Co.*, 2016 WL 6601643, slip op. at 4 (W.D. Wash. 2016).

Hence, PSIC fails to overcome *Cedell's* presumption of discoverability, at least to the extent McCormick Barstow engaged in quasi-fiduciary activities. But more is needed to determine ***which*** otherwise privileged documents and communications that relates to.

### C. Attorney Work Product

PSIC suggests that even if *Cedell* does apply, the work-product doctrine shields the documents and communications at issue. (Dkt. No. 158 at 11.) Indeed, the doctrine prevents the discovery of materials prepared "in anticipation of litigation" by a party or its representatives. Fed. R. Civ. P. 26(b)(3)(A); *In re Grand Jury Subpoena, Mark Torf/Torf Envtl. Mgmt.*, 357 F.3d 900, 907 (9th Cir. 2004).

But documents prepared in the ordinary course of business, such as claim files, are not protected; this is because they would have been created *regardless of the litigation*. *See* Fed. R. Civ. P. 26(b)(3), Advisory Committee Notes; *see also Canyon Ests. Condo. Ass'n v. Atain Specialty Ins. Co.*, 2019 WL 6173231, slip op. at 2 (W.D. Wash. 2019) ("Claims adjustment documents prepared as part of the insurance company's routine duty to investigate are created in the ordinary course of business and therefore are not protected by the work-product doctrine.").

In addition, the doctrine does not shield documents containing counsel's mental impressions, conclusions, and opinions regarding the availability of coverage *if* created in the investigation and evaluation of coverage (*i.e.*, quasi-fiduciary tasks). *Young v. Safeco Ins. Co. of Am.*, 2022 WL 612325, slip op. at 9 (W.D. Wash. 2022); *HSS Enters., LLC v. AMCO Ins. Co.*, 2008 WL 163669, slip op. at 6 (W.D. Wash. 2008).

Here, PSIC seeks to protect its prelitigation documents and communications from disclosure[5] based on its contention that Plaintiff's adversarial communications could be interpreted as threatening litigation. (Dkt. No. 158 at 12.) This alone does not cloak a claim adjustment file in work-product protection. *See HSS Enters.*, 2008 WL 163669 at 4; *Young*, 2022

---

[5] All documents—but one—that Plaintiff seeks predate the commencement of this litigation. (*See* Dkt. No. 157-1 at 12.)

ORDER
C22-1373-JCC
PAGE - 7

WL 612325 at 8. "[C]laim material . . . is discoverable regardless of the commencement of litigation." *Id.* (quoting *Perez v. Am. Fam. Ins. Co.*, 2021 WL 928180, slip op. at 4 (W.D. Wash. 2021)). Fundamentally, PSIC cannot rely on the work-product doctrine to shield documents that it would otherwise be required to be disclosed, regardless of opposing counsel's conduct.

And here, at least from what the Court can glean from the relatively generic entries contained within the privilege log[6] coupled with its review of Mr. Fredette and Mr. Hansen's declarations, some of the documents which Plaintiff seeks appear to have been created in the ordinary course of PSIC's business, *i.e.*, its claim adjustment process. For example, certain communications suggest McCormick Barstow engaged in quasi-fiduciary activities, such as discussing "coverage and claim analysis," (Dkt. No. 157-1 at 2), "expert analysis and opinions," (*id.* at 23, 39), "HOA documents," (*id.* at 28); and, if plaintiff's suspicion is correct, potentially drafting of the denial letter. *See also supra* Part II.B.2.

Hence, the work-product doctrine does not necessarily protect against disclosure. But, again, more is needed to determine **which** documents that relates to.

D.      **Remedial Measures**

Given the findings above, the Court believes that a deposition of a McCormick Barstow representative regarding the nature of its engagement is appropriate. *See Bagley v. Travelers Home & Marine Ins. Co.*, 2016 WL 8738672, slip op. at 2 (W.D. Wash. 2016) (ordering the deposition of defense counsel when defendant failed to meet its burden under *Cedell*). However, the Court will afford PSIC an opportunity to clarify and refine its privilege log one more time. *See Lynch v. Safeco Insurance Company of America*, 2014 WL 12042523, slip op. at 6–7 (W.D. Wash. 2014). After that, if Plaintiff remains dissatisfied with the assertions made in the log, it may depose that representative regarding the nature of McCormick Barstow's engagement. Of course, that representative need not disclose truly privileged information. Once the deposition is

---

[6] *See supra* n. 1.

ORDER
C22-1373-JCC
PAGE - 8

complete, and absent further revisions to the log, the Court will afford Plaintiff the opportunity to select a sample of up to 20 entries for *in camera* review. Based on the results of that review, the Court will then determine whether a more extensive review is required.

### III.      CONCLUSION

For the foregoing reasons, Plaintiff's motion to compel, (Dkt. No. 156), is GRANTED in part. Within 15 days of this order, Defendant is ORDERED to produce any documents or communications for which it has improperly asserted attorney-client or work-product doctrine immunity consistent with the instructions above. If Defendant believes that attorney-client privilege or work-product doctrine protection still apply to certain documents, within 30 days of this order, Defendant is further ORDERED to provide Plaintiff with a revised privilege log and make a McCormick Barstow representative available for a deposition by Plaintiff regarding the nature of its engagement with PSIC. If Plaintiff remains dissatisfied with the privilege log, it may then select 20 documents for *in camera* review. Defendant would then be ordered to provide the Court with those documents within 5 days of service of Plaintiff's selection.

DATED this 16th day of November 2023.

John C. Coughenour
UNITED STATES DISTRICT JUDGE