THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SIXTY-01 ASSOCIATION OF
APARTMENT OWNERS,

                Plaintiff,

  v.

PUBLIC SERVICE INSURANCE
COMPANY, *et al.*,

                Defendants.

CASE NO. C22-1373-JCC

ORDER

This matter comes before the Court on Plaintiff Sixty-01 Association of Apartment Owners' (the "Association") second motion for partial summary judgment against Defendant Public Service Insurance Company ("PSIC") (Dkt. No. 196). Having thoroughly considered the briefing and the relevant record, the Court DENIES the motion for the reasons explained below.

## I.    BACKGROUND

The Court has described the facts of this insurance dispute in a prior order and will not restate them here. (*See* Dkt. No. 151 at 1–3.) In that order, the Court found that the Association's all-risk insurance policy from PSIC covered the perils of "water intrusion," "wind-driven rain," and "weather," by virtue of an ensuing loss provision. (*Id.* at 8–9.) Buoyed by that ruling, and the Washington Supreme Court's decision in *The Gardens Condominium v. Farmers Ins. Exch.*, 544 P.3d 499 (Wash. 2024) ("*Gardens*"), the Association now moves for partial summary judgment

ORDER
C22-1373-JCC
PAGE - 1

as to whether (1) PSIC's denial of coverage for the Association's loss was unreasonable, amounting to bad faith as a matter of law; and (2) PSIC's recent estimate of a $39 million order of magnitude establishes a floor for the Association's damages in this case. (Dkt. No. 196 at 18–21.)

## II.    DISCUSSION

### A.    Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making such a determination, the Court must view the facts in the light most favorable to the nonmoving party and draw justifiable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). When a summary judgment motion is properly made, an opposing party must assert specific facts that present a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). Ultimately, summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### B.    Genuine Issues of Fact Preclude Summary Judgment

#### 1.   The Association Cannot Establish Bad Faith as a Matter of Law

According to Washington's Insurance Code, insurers have a duty to act in good faith, abstain from deception, and practice honesty and equity in insurance matters. *See* RCW 48.01.030. And Washington's Insurance Fair Conduct Act ("IFCA") provides a right of action for unreasonable coverage denials. *See* RCW 48.30.015. In moving for partial summary judgment, the Association seeks to establish, as a matter of law, that PSIC adjusted its claim in bad faith. (*See* Dkt. No. 196 at 18–21.) The Court notes that this case is not the prototypical first-party bad faith claim, where an insured is preyed upon by an unscrupulous insurer. Here, from the moment the Association submitted its claim to PSIC, the Association was represented by counsel. (Dkt. No. 197-1.) And the Association's counsel appears quite competent in advising its

client on Washington insurance law. While this has no direct legal import, the Court cannot help but view the Association's bad faith contentions through this lens.

In general, an insurer owes a duty of good faith to its policyholder, and violations of the duty can give rise to a bad faith action. *Jin v. GEICO Advantage Ins. Co.*, 700 F. Supp. 3d 988, 994 (W.D. Wash. 2023). In asserting a bad faith claim, the policyholder bears the burden of proving that the insurer's breach was "'unreasonable, frivolous, or unfounded.'" *Id.* (quoting *Smith v. Safeco Ins. Co.*, 78 P.3d 1274, 1277 (Wash. 2003)). And an insurer's bad faith is generally a question of fact, although it "can be determined at summary judgment if reasonable minds could not differ in finding the insurer's conduct unreasonable." *Heather v. Allstate Prop. & Cas. Ins. Co.*, 2020 WL 30340, slip op. at 2 (W.D. Wash. 2020).

The Association argues bad faith as a matter of law based on two main theories. First, that PSIC intentionally misrepresented the date of an intrusive investigation to support a suit limitation defense. (Dkt. No. 196 at 18–19.) Second, that PSIC's failure in its denial letter[1] to fully address potential coverage provided by the ensuing loss clause was unreasonable. (*Id.* at 19–20.)

### i.  *Suit Limitation Provision*

According to PSIC's policies, any legal action must be brought "within 2 years after the date on which the direct physical loss or damage occurred." (*See, e.g.,* Dkt. No. 127-3 at 27.) This is typical in the industry and is frequently referenced as a suit limitation clause. (*See, e.g.,* Dkt. No. 225 at 4.) But until such damage is apparent to the insured, the time period does not begin to run. *See Panorama Village Condo. Owners Ass'n Bd. of Directors v. Allstate Ins. Co.*, 26 P.3d 910, 915 (Wash. 2001). The Association contends PSIC intentionally misrepresented when damage was in fact exposed, so as to avail itself of the suit limitation provision, which is

---

[1] The parties differ on whether PSIC's June 8, 2022, correspondence to the Association (Dkt. No. 197-6) was a "denial letter" or a preliminary "coverage determination." (*Compare* Dkt. No. 225 at 11, *with* Dkt. No. 231 at 4.) For purposes of the instant motion, this is a distinction without a difference. The Court refers to it as a "denial letter" for the time being.

1    tantamount to bad faith as a matter of law. (Dkt. No. 196 at 18–19.)

2         By way of review, the Association retained the Amento Group to inspect the property for

3    hidden water damage. (*See generally* Dkt. No. 42-4.) Amento, in turn, put forth an investigation

4    plan in March 2019, which included January 2019 photos of damage visible throughout the

5    property. (*Id.* at 7–189.) Amento then documented, through May 2019 photographs, intrusive

6    testing results, which it later performed. (*Id.* at 201–360.) The Association, through counsel,

7    provided notice of loss to PSIC in April 2021. (Dkt. No. 197-1.) This notice was less than two

8    years after the May 2019 photos *but* more than two years after the January 2019 photos.

9         Two PSIC documents characterizing this timeline are at the center of the instant motion,

10   at least as it relates to the suit limitation provision: PSIC's denial letter to the Association and

11   PSIC's internal coverage analysis. (*See* Dkt. Nos. 197-4, 197-6.) The internal coverage analysis

12   states that "[Amento's] proposed investigation plan was submitted to the HOA in January 2019

13   and that, in turn, led to an actual intrusive investigation in May 2019." (Dkt. No. 197-4 at 5.)

14   This suggests PSIC knew that intrusive testing did not occur until May. But compare this to

15   PSIC's earlier denial letter, which states that it "understands that . . . Amento conducted an

16   intrusive inspection of the Association Premises *beginning in January 2019* during which

17   openings were made at 24 locations." (Dkt. 197-6 at 3) (emphasis added).

18        From the Association's standpoint, PSIC misrepresented the date that intrusive

19   investigation occurred in its denial letter, and this misrepresentation was intentional. (*See* Dkt.

20   No. 196 at 19; Dkt. No. 231 at 7.) However, the Association's take on what PSIC did or did not

21   know, despite the language in the coverage analysis, is largely speculative. And, as PSIC points

22   out, the January 2019 photographs suggest that Amento did indeed engage in more than a

23   cursory inspection of the property, prior to the May 2019 testing. (*See* Dkt. No. 225 at 22–24)

24   (*citing* Dkt. No. 227 at 3). In fact, PSIC purports that the January 2019 photographs suggest at

25   least some intrusive testing occurring at that time. (*See* Dkt. Nos. 227-1 at 8–159, 227-2 at 2–11).

26   According to PSIC, then, what occurred in May was simply *additional* intrusive testing. (Dkt.
     No. 225 at 23.)

This is sufficient to establish a genuine issue of fact regarding *when* the Association became aware of the water damage. As such, the Court cannot find that PSIC's invocation of the suit limitation provision at the time of its denial establishes bad faith as a matter of law today.

ii. *Ensuing Loss Provision*

PSIC's denial letter also indicated that the ensuing loss provision would not afford coverage. (*See* Dkt. No. 197-6 at 11.) The Association argues this establishes bad faith as a matter of law because that position is not consistent with Washington law at the time and PSIC knew it. (*See* Dkt. No. 196 at 2.) As PSIC correctly points out, the insured bears the burden of demonstrating that an exception to an exclusion, such as ensuing loss coverage, applies. (*See* Dkt. No. 225 at 19) (citing *MKB Constructors v. Am. Zurich Ins. Co.*, 49 F. Supp. 3d 814, 836 (W.D. Wash. 2014)). Therefore, in support of its motion, the Association points to internal PSIC communications, testimony from PSIC's Rule 30(b)(6) deponent, and the Association's IFCA notice. (*See* Dkt. No. 231 at 8–12) (citing Dkt. Nos. 197-3 at 13–14, 197-4 at 4, 197-7 at 5–6). In the Court's view, none of this establishes bad faith as a matter of law.

As for the internal communications, it states that "[*i]nasmuch* as the potentially applicable policy exclusions do not preclude coverage" the estimated covered loss "appears to be an extremely low figure." (Dkt. No. 197-4 at 4) (emphasis added). The Court does not view this communication in the same light the Association does. Namely, it is conditional—not absolute— suggesting that *if* there is coverage, the loss estimate is low. Such conditional language does not evince bad faith. The Association's references to the Rule 30(b)(6) deponent's testimony on this topic do not suggest otherwise. Finally, the IFCA notice postdates the denial, so it is irrelevant in establishing bad faith, at least vis-a-vis the denial letter.

To be clear, for purposes of the instant motion, the Court must assess whether the denial was unreasonable, as a matter of law, based on Washington law at the time of PSIC's denial. And while the current Washington law the Association cites regarding the import of an ensuing loss provision speaks to PSIC's indemnity obligation, it does not speak to the issue of bad faith. Here, PSIC asserts it acted reasonably at the time of denial because the water damage resulted

from an excluded cause: faulty construction. (Dkt. No. 225 at 15–19) (citing *Xia v. ProBuilders Specialty Ins. Co.,* 400 P.3d 1234, 1241 (Wash. 2017)). The Association pushes back, noting that based on *Gardens*, 544 P.3d 499 (Wash. 2024),[2] the ensuing loss provision was always effective, thereby trumping the faulty construction exclusion. (*See* Dkt. No. 231 at 8–13). Indeed, while the *Gardens* Court stated that it merely reaffirmed existing Washington law, citing *Vision One, LLC v. Philadelphia Indem. Ins. Co.*, 276 P.3d 300 (Wash. 2012) and *Sprague v. Safeco Ins. Co. of Am.*, 276 P.3d 1270 (Wash. 2012), *see* 544 P.3d at 839–45, other courts did not uniformly hold this view. *See, e.g., Belmain Place Condo. Owners Ass'n v. Am. Ins. Co.,* 2019 WL 4190170, slip op. at 2 (W.D. Wash. 2019) (finding that a provision similar to the one in PSIC's policy could exclude a peril otherwise covered through an ensuing loss provision). Therefore, the Court finds the Association's characterization of Washington law, at the time of the denial, inaccurate.

For this reason, it would be inappropriate to now find, as a matter of law, that PSIC's reliance on the ensuing loss provision, at least at the time of the denial, was unreasonable and rose to the level of bad faith. *See Hunting v. Am. Fam. Mut. Ins. Co.*, 2020 WL 6152664, slip op at 8 (W.D. Wash. 2020), *aff'd* 2021 WL 6102999 (9th Cir. 2021) (a denial of coverage based on a reasonable interpretation of the policy does not amount to bad faith, even if the interpretation is incorrect).

2.  <u>Floor for Damages</u>

On August 15, 2024, PSIC's 30(b)(6) deponent testified that its retained experts (Ankura and CERTA Building Solutions) prepared a rough order of magnitude estimate regarding the

---

[2] *Gardens* involved an insurance policy dispute between a condominium association and an all-risk first party insurer, whose policy included a resulting loss exception which afforded coverage when an excluded event, faulty workmanship, caused loss or damage arose. *See* 544 P.3d at 501. The faulty workmanship—also potentially at issue in this case—resulted in condensation and water vapor that caused water damage to the roof. *Id*. The *Gardens* court determined the resulting loss exception to the faulty workmanship exclusion preserved coverage for the subsequent perils (condensation and water vapor) and loss (water damage). *Id*. at 504–05. Moreover, the resulting loss exception preserved coverage regardless of whether the peril was the natural consequence or independent of an excluded peril. *Id*.

potential scope and related pricing considerations for the Association's claim, if it were to be a covered loss. (Dkt. No. 197-3 at 12.) This estimate amounted to just over $39 million. (*Id.*) In moving for summary judgment, the Association asserts that PSIC's admission entitles the Association to judgment as a matter of law of liability (if proven) of no less than $39 million. (Dkt. No. 196 at 21.)[3] But, as PSIC notes, this is not an estimate of covered damages. (Dkt. No. 225 at 14.) Rather, it is a rough order of magnitude, based on an evaluation of potential scope and pricing. (*Id.*) It fails to consider, amongst other things, the import of the suit limitation clause, *see supra* Part II.B.1.i.; whether the Association's loss was in fact fortuitous; potential offsets for settlements with other insurers; and even the proximate cause of the loss (and whether that cause is a covered event). (*Id.*) Therefore, the Court cannot grant summary judgment on this issue to the Association.

### III.    CONCLUSION

For the foregoing reasons, the Association's second motion for partial summary judgment (Dkt. No. 196) is DENIED.

DATED this 9th day of December 2024.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

---

[3] The Association argues PSIC is "on the record" for "having admitted to no less [than this amount] of covered damage for [the] loss." (*Id.*)