THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SIXTY-01 ASSOCIATION OF APARTMENT OWNERS,<br><br>Plaintiff,<br><br>v.<br><br>PUBLIC SERVICE INSURANCE COMPANY, *et al.*,<br><br>Defendants. | CASE NO. C22-1373-JCC<br><br>ORDER |

This matter comes before the Court on Defendant Public Service Insurance Company's ("PSIC") motion for summary judgment (Dkt. No. 256) and Plaintiff's motion for partial summary judgment (Dkt. No. 254). Having thoroughly considered the briefing and record, and finding oral argument unnecessary,[1] the Court GRANTS in part and DENIES in part Plaintiff's motion (Dkt. No. 254) and DENIES in full PSIC's motion (Dkt. No. 256) as explained below for the reasons described herein.

I.  **BACKGROUND**

This is a first-party insurance indemnity and bad faith case involving alleged widespread hidden water damage. (*See generally* Dkt. No. 84.) Plaintiff is the owner association for a large

---

[1] Such argument is unnecessary because each party has had a full opportunity to brief issues presented in their motions. *See Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

condominium development[2] located in Redmond, Washington. (Dkt. No. 84 at 2, 4; *see* Dkt. No. 257-1 at 2.) It was constructed between 1968 and 1972 and is made up of wood-framed shingle-clad townhomes and multi-unit midrise buildings. (Dkt. No. 257-1 at 2.)

In April 2021, following its alleged discovery of the hidden water damage, Plaintiff notified its current and past insurers, including PSIC, of a potentially covered loss. (Dkt. No. 84 at 5.) Total repair estimates for the water damage top $100 million.[3] (*See, e.g.,* Dkt. No. 257-15 at 3.) PSIC had provided Plaintiff with all-risk insurance policies for the years 2000–08 and again in 2012 and 2013. (*See id.* at 2, Dkt. No. 92 at 2.) Plaintiff says PSIC unreasonably investigated and adjusted the claim and made an inappropriate denial decision—all of which evinced bad faith. (*Id.* at 5–6.) In a Second Amended Complaint ("SAC"), Plaintiff asserts contractual and extra-contractual causes of action against PSIC.[4] (Dkt. No. 84 at 8–11.) PSIC, for its part, largely denies Plaintiff's allegations and contests its claims—in doing so, PSIC also lodged a variety of affirmative defenses. (*Id.* at 11–18.)

Trial is approaching and discovery is closed. (*See* Dkt. Nos. 219, 263.) Thus, the parties cross-move for summary judgment. PSIC seeks judgment as a matter of law on Plaintiff's case in chief. (*See generally* Dkt. No. 256.) Plaintiff seeks partial judgment on many of PSIC's defenses. (*See generally* Dkt. No. 254.)

## II.    DISCUSSION

### A.    Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering such motions, the Court must view the facts and justifiable

---

[2] It is comprised of 770 residential units spread across 46 separate buildings, in addition to garages, carports, and recreation and maintenance buildings. (*See* Dkt. No. 257-1 at 2.)

[3] PSIC's rough order of magnitude is significantly less—just under $40 million. (Dkt. No. 255-7 at 35.)

[4] Plaintiff voluntarily dismissed its causes of action against all other insurers after reaching settlement agreements with each. (*See* Dkt. No. 173 at 2.)

C22-1373-JCC
ORDER
PAGE 2

inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Accordingly, summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Specifically, the opposing party "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)).

At trial, the defendant has the burden of proof on affirmative defenses. *Jones v. Taber*, 648 F.2d 1201, 1203 (9th Cir. 1981). When a plaintiff moves for summary judgment, it need only show that the defendant does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *See Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

**B.    Breach of Contract Claim**

Under Washington law, the Court uses a two-step process to determine whether insurance coverage exists: (1) the insured must first show that the policy covers the loss; then (2) to avoid coverage, the insurer must point to specific policy language excluding the loss. *Wright v. Safeco Ins. Co. of America*, 109 P.3d 1, 5 (Wash. Ct. App. 2004). "Interpretation of the terms of an insurance policy is a matter of law." *Allstate Ins. Co. v. Raynor*, 21 P.3d 707, 711 (Wash. 2001). The Court interprets undefined terms in policy language as they would be read by an ordinary insurance consumer. *See Moeller v. Farmers Ins. Co. of Wash.*, 267 P.3d 998, 1002 (Wash. 2011). Inclusionary clauses must "be liberally construed to provide coverage." *Riley v. Viking Ins. Co. of Wisconsin*, 733 P.2d 556, 558 (Wash. Ct. App. 1987). "Exclusionary clauses should be construed against the insurer with special strictness." *McAllister v. Agora Syndicate, Inc.*, 11 P.3d 859, 860 (Wash. Ct. App. 2000).

PSIC first contends that, as a matter of law, Plaintiff's breach of contract claim is barred by a two-year suit limitation provision and, even if it were not, the water damage is not covered by PSIC policies, given various coverage exclusions. (*See* Dkt. No. 256 at 18–22.) The Court

addresses these arguments below, as well as Plaintiff corollary arguments on PSIC's affirmative defense implicating the same suit-limitation provision and coverage exclusions. (*See* Dkt. No. 254 at 18, 22–25.)

1. Suit-Limitation Provision

PSIC's policies provide that "legal action against us" must be "brought within 2 years after the date on which the direct physical loss or damage occurred." (Dkt. No. 257-16 at 45.) Here, it is undisputed that Plaintiff's suit commenced April 27, 2021 (per a tolling agreement). (Dkt. No. 257-11.) And (at least according to the SAC) Plaintiff first "uncovered" hidden damage "in May 2019." (Dkt. No. 84 at 5.) This is based on 24 building envelope openings its consultants, Amento Group, made between May 13 and May 16, 2019,[5] revealing damage in 19 (of the 24) locations. (Dkt. No. 257-1 at 2.) Plaintiff filed suit some 23 months later. In seeking judgment as a matter of law on the import of the suit limitation provision, PSIC makes both legal and factual arguments. (*See* Dkt. No. 256 at 18–22.)

As to the legal arguments, this is not the first time PSIC has done so. It first did when seeking Rule 12(b)(6) dismissal. (Dkt. No. 40 at 11–16.) In denying that motion, the Court applied the discovery standard for hidden damage as articulated in *Panorama Village*, namely, that a suit limitation period does not begin until the damage is exposed. *See Panorama Village Condo. Owners Ass'n Bd. of Directors v. Allstate Ins. Co.*, 26 P.3d 910, 915 (Wash. 2001). (*See* Dkt. No. 80 at 4.) PSIC now points to later-issued rulings, including *Olympic Vista Homeowners Assn. v. State Farm Fire and Cas. Co.*, 2023 WL 5509303, slip op. at 3 (W.D. Wash. 2023), suggesting that the period begins no later than a policy's end date. (*See* Dkt. No. 256 at 20–21.) Thus, says PSIC, Plaintiff's breach of contract claim fails as a matter of law. (*Id.*)

But the cases PSIC cites are inapt, as the policy language in each regarding "hidden decay" differs markedly from that employed by PSIC (and Allstate in the *Panorama Village* matter). *Compare Olympic Vista Homeowners Assn. v. State Farm Fire and Cas. Co.*, 2023 WL

---

[5] Subsequent intrusive investigations followed. (*See* Dkt. No. 257-1 at 2.)

5509303, slip op. at 3 (W.D. Wash. 2023), and *Gold Creek Condo.-Phase I Assn. of Apt. Owners v. State Farm Fire and Cas. Co.*, 2023 WL 8711820, slip op. at 1–2 (9th Cir. 2023); *with* (Dkt. No. 257-16 at 33), and *Panorama Village Condo. Owners Ass'n Bd. of Directors*, 26 P.3d at 140. Thus, *Panorama Village* continues to control.

PSIC next contends, that even if *Panorama Village's* "upon discovery" standard apples, (a) Plaintiff's interpretation of the requisite scope of knowledge (as to how widespread the damage may be) to trigger the limitation period is incorrect and, regardless, (b) uncontroverted evidence demonstrates that Plaintiff was, in fact, aware of widespread damage before Amento's May 2019 inspection. (Dkt. No. 256 at 18–20.) Plaintiff, in opposing and cross-moving on PSIC's related defenses (Nos. 1, 3, 4, 8, 10), (*see* Dkt. No. 92 at 12) (PSIC's affirmative pleading), argues PSIC presents no evidence demonstrating pre-May 2019 knowledge of systemic damage. (Dkt. Nos. 254 at 22–25, 283 at 3–8).

    a.   *Required Scope of Knowledge*

PSIC argues that, even if the suit-limitation period begins upon discovery, the insured need not be aware of the *full breadth* of such damage. (*See* Dkt. No. 256 at 19.) A one-off or targeted instance of siding removal (thus exposing damage) is sufficient. (*Id.*) In support, PSIC relies on *Norgal Seattle Partn. v. Natl. Sur. Corp.*, 2012 WL 1377762, slip op. at 3 (W.D. Wash. 2012). (*See id.*) However, that is not quite what *Norgal* said. It only indicated that something less than removing all siding would suffice. *See Norgal Seattle Partn.*, 2012 WL 1377762 at 3. It did not opine how much (other than to say an insured need remove "the last bit of exterior siding" to "reveal[] the last bit of hidden decay"). *Id.* And even if the Court were to read *Norgal* as PSIC requests (which it does not), such a requirement is not consistent with what other courts have held, namely, that a plaintiff must first be aware of widespread and/or system-wide damage before a suit-limitation period begins to run. *See, e.g.*, *Greenlake Condo. Assn. v. Allstate Ins. Co.*, 2016 WL 4498245, slip op. at 2 (W.D. Wash. 2016); *Eagle Harbour Condo. Assn. v. Allstate Ins. Co.*, 2015 WL 9478134, slip op. at 2 (W.D. Wash. 2015). This Court's view is in accord with those rulings. Awareness of systemic or widespread damage (as opposed to a

1   targeted or one-off instance thereof) is, indeed, required.

   b.  *Relevant Facts*

PSIC also argues that Plaintiff was aware of widespread damage well before May 2019. (Dkt. No. 256 at 18–20.) In support, PSIC points to the following evidence: Amento's non-intrusive January 2019 condition assessment, (Dkt. No. 257-1 at 2), targeted shingle/siding repairs in the preceding years, (Dkt. Nos. 258-10 at 2–5, 258-11 at 3, 258-12 at 2, 261 at 6–10, 270-1–270-41, 270-55), a 2010 reserve study, (Dkt. No. 258-13 at 58), and records and testimony confirming the existence of deterioration/rot well before 2019, (Dkt. Nos. 258-6 at 3, 258-7 at 2, 258-8 at 3, 258-9 at 3, 270-43 at 40–41, 270-50 at 3, 270-51 at 3, 270-52 at 3). While this does suggest that Plaintiff knew of *some* hidden damage before May 2019, it does not speak to the *scope* of Plaintiff's awareness. For this, PSIC presents two declarations: one from Plaintiff's former property manager (Dkt. No. 261), and another from Plaintiff's former property/maintenance director (Dkt. No. 260). (*See* Dkt. No. 256 at 20.) Neither establish PSIC's purportedly unrebutted facts.

As to the property manager, she indicates she shared concerns regarding possible hidden damage in 2017 and 2018. (Dkt. No. 261 at 2–3.) But this testimony is rebutted by a later-filed declaration, where she recanted relevant portions (and clarified that she is not qualified to make such assessments). (Dkt. No. 275 at 1–3.)[6] As to the property and/or maintenance director, he only describes discovering isolated instances of deterioration/rot underneath replaced/repaired siding, not systemic findings. (Dkt. No. 260 at 2.) And, as he later clarified, he only discovered this "approximately 15%" of the time he replaced or repaired siding. (Dkt. No. 274 at 2.) Collectively, these declarations do not establish indisputable knowledge of widespread damage; genuine issues of material fact remain.

---

[6] In addition, Plaintiff, in opposing PSIC's motion for summary judgment (and in support of its own motion), proffers a declaration from its Vice President challenging the veracity of this testimony. (*See generally* Dkt. No. 273.) PSIC moves to strike based on alleged Rule 26 violations. (Dkt. No. 280 at 7.) As the Court has not considered this testimony in reaching its finding, it need not entertain PSIC's request to strike.

1	Given the controlling law regarding the type of discovery required to commence a suit
2	limitation provision and genuine issues of fact as to Plaintiff's pre-May 2019 knowledge, neither
3	party is entitled to summary judgment on the import of this provision. *See Nissan Fire & Marine*
4	*Ins. Co., Ltd.*, 210 F.3d at 1105 (comparing the evidentiary Rule 56(e) burdens between moving
5	and non-moving parties with differing trial burdens) (citing *Adickes v. S. H. Kress & Co.*, 398
6	U.S. 144, 161 (1970)).

Summary judgment is **DENIED** to both parties on the suit-limitation provision (*i.e.*, to Plaintiff's case in chief and to PSIC's affirmative defense numbers 1, 3, 4, 8, and 10).

2. Coverage Exclusions

The parties' cross-motions next focus on certain coverage exclusions in light of PSIC's ensuing loss provisions. (Dkt. Nos. 254 at 29–33, 35–36; 256 at 21–23.) To be clear, the Court previously granted summary judgment to Plaintiff on the interpretation and application of PSIC's ensuing loss provisions, (Dkt. No. 257-16 at 42, 84). (*See* Dkt. No. 151 at 4–8.) It will not retread that analysis here other than to say that its prior conclusion—namely, that PSIC's policies "cover[] damage resulting from water intrusion, wind-driven rain, and/or weather to the extent it results from faulty, inadequate or defective construction or maintenance," (Dkt. No. 151 at 9)—remains intact. If anything, it is bolstered by the Washington Supreme Court's later decision in *Gardens Condo. v. Farmers Ins. Exch.*, 544 P.3d 499, 503 (Wash. 2024).

　　a. PSIC's Motion

In moving for summary judgment, PSIC reminds the Court that the provision only applies to *covered* ensuing perils, meaning, it cannot create coverage for otherwise excluded subsequent perils. (Dkt. Nos. 256 at 21, 280 at 11–15.) PSIC then argues the following excluded perils (not subject to the ensuing loss provision) apply here: wear and tear, rust, fungus, decay, deterioration, and infestation. (Dkt. No. 256 at 23) (referencing Dkt. No. 257-16 at 41). This is because, says PSIC, (a) the SAC only speaks to the peril of water infiltration, (b) this is the sole issue Plaintiff complains of, and (c) decay or deterioration are the natural result of water infiltration. (*Id.*)

This argument conflates types of *harm* with their *cause*. *See Ridge at Riverview Homeowner's Assn. v. Country Cas. Ins. Co.*, 2023 WL 22678, slip op. at 11–12 (W.D. Wash. 2023) (dismissing the same argument). And it ignores the policy language, which speaks only in terms of excluded *causes*—not resultant *harms*. (*See* Dkt. No. 257-16 at 39.) PSIC's policy, much like Country Casualty Insurance Company's in the *Ridge at Riverview*, excludes "damage *caused* indirectly or directly by [these perils]." (*Id.*) Whereas, the only evidence presented here, (*see generally* Dkt. Nos. 255-2, 255-6, 255-7, 255-9–255-12; *see* Dkt. No 151 at 9), indicates that, while deterioration may be present, it is not the *cause* of *harm* to Plaintiff but rather an irrelevant resulting harm. Moreover, to the extent <u>wear and tear</u> was a cause, PSIC's representative and experts concede they were not tasked with determining its role in Plaintiff's loss. (*See* Dkt. Nos. 255-4 at 4–6, 255-13 at 29, 30; 255-14 at 6, 7; 272-6 at 4, 5.)

Thus, PSIC does not provide the Court with a basis to find, as a matter of law, that the wear and tear, decay, or deterioration policy exclusions apply here.

    b. *Plaintiff's Cross-Motion*

Plaintiff seeks judgment as a matter of law on PSIC's defense (No. 45), involving the same loss provision, along with defenses (Nos. 35, 37), implicating related policy exclusions. (Dkt. No. 254 at 29–33, 35–36.)

Defense number 45 asserts "Plaintiff's claimed damages and losses are not an ensuing loss within the meaning of the PSIC policies." (Dkt. No. 92 at 18.) And defense number 35 asserts that "Plaintiff's claims are barred . . . by the exclusion for loss caused by faulty, inadequate or defective: . . . workmanship, repair, construction . . . or maintenance . . . ." (*Id.* at 16.) But, as noted above, water intrusion, wind-driven rain, and/or weather are a covered ensuing loss to the extent they result from faulty, inadequate, or defective construction or maintenance. (Dkt. No. 151 at 9.) Thus, these defenses fail as a matter of law.

Affirmative defense number 37 asserts "Plaintiff's claims are barred . . . by the exclusion for loss caused by or resulting from wear and tear . . . fungus, decay, deterioration . . . ." (Dkt. No. 92 at 16.) These causes, unlike those articulated in defense 35, are not subject to ensuing loss

language. (*Compare* Dkt. No. 257-16 at 41, *with id.* at 42, 84.) Therefore, to the extent PSIC puts forth evidence specifically supporting these causes of harm (including wear and tear), PSIC can present such facts to a jury. And PSIC puts forth some evidence that wear and tear (rather than construction defects or inadequate maintenance) played a role in allowing water intrusion. (*See* Dkt. No. 255-12 at 27.) Frankly, given the complex's age, this stands to reason. (*See* Dkt. Nos. 361 at 2, 270-61 at 4.) Therefore, a genuine issue of fact exists as to whether wear and tear is a cause of the resulting water intrusion.[7]

Summary judgment is **DENIED** to PSIC on the decay and deterioration policy exclusion, **GRANTED** to Plaintiff on PSIC's affirmative defenses numbers 35 and 45, and **DENIED** to Plaintiff on PSIC's defense number 37.

3. Other Policy Considerations

The parties seek summary judgment on a variety of other policy related issues. The Court addresses each in turn.

a. PSIC's Motion

PSIC seeks judgment as a matter of law on whether (i) it must pay replacement costs and (ii) whether the amounts Plaintiff received from other insurers (through settlements) reduce PSIC's obligation. (Dkt. No. 256 at 23–28.)

On the issue of replacement cost, PSIC's policies provide for its payment if "repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years." (Dkt. No. 257-16 at 65.) Otherwise, actual cash value ("ACV") is due. (*Id.*) Here, it is undisputed that more than two years have elapsed without such repairs. (*See generally* Dkt. Nos. 256, 271.) So, says PSIC, its liability is limited to the ACV of Plaintiff's insurance claim. But replacement cost limitations such as this one are not binding if the insurer does not promptly pay

---

[7] PSIC also relies on the same argument above, namely that the Court's interpretation of the ensuing loss provision and the *Ridge at Riverview's* application of a similar exclusion encompassing decay and deterioration are wrong. (*See* Dkt. No. 269 at 12–16.) This argument is no more convincing here than it was above.

a tendered claim. *See, e.g., Green v. Allstate Ins. Co.*, 2015 WL 10939709, slip op. at 3 (D. Alaska 2015), *aff'd*, 691 F. App'x 356 (9th Cir. 2017) (citing the doctrine of "prevention"); *Fitzgerald v. Am. Fam. Mut. Ins. Co.*, 2015 WL 5896139, slip op. at 6 (D. Or. 2015) (same). And it is undisputed that PSIC has not paid. (*See generally* Dkt. Nos. 256, 271.) Thus, the two-year restriction does not control here.

On the issue of what to do with payments from other insurers, it is undisputed that Plaintiff received $79.3 million in settlements for losses on which it now also seeks recovery from PSIC. (*See* Dkt. Nos. 256 at 28, 271 at 31.) And PSIC's policies provide it will only pay for "our share" of the loss if there is "other insurance subject to the same plan, terms, conditions, and provisions [as PSIC's]" and, moreover, that it need only pay for the loss "in excess of the amount due from [another] insurance" for "the same loss." (Dkt. Nos. 197-6 at 27–28, 257-16 at 61.) Thus, PSIC contends, its liability is limited to its "*pro rata* share," or, alternatively, the excess loss (over what Plaintiff has already received). (Dkt. No. 256 at 25–28.)

In response, Plaintiff makes a curious argument: its agreements with those insurers did not explicitly allocate settlement amounts between contract and extra-contract claims, thus, there is no basis for offset or allocation against a breach of contract award due from PSIC. (Dkt. No. 271 at 28–33.) The argument is unpersuasive. Nevertheless, the Court will not address the issue now. The amount of Plaintiff's contract claim (if any) against PSIC has yet to be determined. So the issue of allocation or offset is unripe. This is a post-trial issue. *See Canyon Estates Condo. Assn. v. Atain Specialty Ins. Co.*, 2021 WL 1208581, slip op. at 7 (W.D. Wash. 2021). If a jury finds for Plaintiff on this claim, the Court will then determine as a matter of law what amount is subject to apportionment or offset (either based on the policies' terms or equitable considerations).

Summary judgment is DENIED to PSIC on the policy provisions discussed above.

b. *Plaintiff's Cross-Motion*

Plaintiff seeks partial summary judgment on the following contract-based defenses: (i) other insurance (No. 25) and available indemnity amount (No. 46); (ii) timing of damage (Nos.

21, 28); (iii) laches (No. 16) and/or untimely notice (Nos. 23, 24); (iv) duties in event of loss (20); (v) fortuity (No. 7) and loss in progress (No. 22); (vi) misrepresentation and concealment (No. 32) or bad faith (No. 48); and (vii) failure to mitigate (No. 9). The Court addresses each below.

       i. Defenses No. 25, 46—Other Insurance & Indemnity Amount

  Affirmative defense number 25 asserts "Plaintiff's claims are barred . . . because of the 'other insurance' provision of the PSIC policies." (Dkt. No. 92 at 14.) And defense number 46 asserts that "Plaintiff's claims are barred" based on the "available amount of indemnity." (Dkt. No. 92 at 18.) This is relevant because, as Plaintiff indicates, PSIC's policy limits for the years 2000–08, 2012, and 2013 ranged from roughly $69 to $83.4 million annually (depending on the year), yet Plaintiff estimates a coverage claim approximating $122 million. (Dkt. No. 254 at 18.)

  Plaintiff argues that both defenses fail as a matter of law. (*Id.* at 17–18.) This is based on its interpretation of the continuous trigger rule (as described in the Court's *Sunwood* decision, *see Sunwood Condo. Assn. v. Travelers Cas. Ins. Co. of Am.*, 2017 WL 5499809, slip op. at 4 (W.D. Wash. 2017)). (*Id.*) Plaintiff contends that: (a) PSIC is jointly and severally liable up to the combined policy limits for all years, roughly $600 million, and (b) because none of the settlements with other insurers specifically designate what portion is allocable to Plaintiff's breach of contract claims, PSIC must pay the entirety. (Dkt. No. 254 at 17–18.)

  Plaintiff misapplies *Sunwood*. There, the policy lacked clear limiting language. *See* 2017 WL 5499809, slip op. at 6 (describing the "absence of a temporal limitation of coverage" and noting that "[i]f the insurer intends to be liable solely on a pro rata basis, the insurer must include that language in the policy."). Here, the policies provide they will pay their "share" of the loss or "excess" loss not otherwise covered. (Dkt. No. 257-16 at 61.) This comports with requirements for allocation articulated not only in *Sunwood* but in the decisions forming this Court's ruling in *Sunwood*. *See Am. Nat. Fire Ins. Co. v. B & L Trucking and Const. Co., Inc.*, 951 P.2d 250, 254, 256 (Wash. 1998) (discussing import of "other insurance" and "pro rata" clauses); *Villella v. Pub. Employees Mut. Ins. Co.*, 725 P.2d 957, 960 (Wash. 1986) (addressing joint and several

liability); *Gruol Const. Co., Inc. v. Ins. Co. of N.A.*, 524 P.2d 427, 431 (Wash. Ct. App. 1974) (allowing for apportionment of joint and several liability). Thus, PSIC's liability here is *not* joint and several.

Summary judgment to Plaintiff is not warranted on defenses 25 or 46.

### ii. Defense Nos. 21, 28—Timing of Damage

Affirmative defense number 21 asserts "Plaintiff's claims are barred . . . to the extent that any loss . . . did not occur within the policy period" and defense number 28 asserts such claims are barred "to the extent [they] did not commence until after the respective policy period(s)." (Dkt. No. 92 at 14.) In support of its motion, Plaintiff points to testimony from Amento Group that "damage would have started . . . relatively shortly after [original construction]," thus occurring within the policy periods 2000–08 and 2012–13. (Dkt. No. 255-16 at 14.) Plaintiff further points to testimony from PSIC's expert confirming that PSIC did not ask him to opine as to "when damage began at the condominium." (Dkt. No. 255-14 at 13.) Whereas PSIC offers no rebutting evidence. (*See generally* Dkt. No. 269 at 16–20.) Thus, PSIC fails to establish a genuine issue of fact as to when damage occurred. In light of this and the continuous trigger rule, as discussed above, summary judgment is warranted to Plaintiff on defenses 21 and 28.

### iii. Defenses No. 16, 23, 24—Laches & Untimely Notice

Affirmative defense number 16 asserts "Plaintiff's claims are barred . . . by the doctrine of laches." (Dkt. No. 92 at 13.) Similarly, defense numbers 23 and 24 assert that Plaintiff's claims are barred because "Plaintiff failed to provide prompt notice of loss" (number 23) such that "Plaintiff's late notice . . . was prejudicial to PSIC" (number 24). (*Id.* at 14.) The former is based on a general doctrine applicable to contract disputes,[8] and the latter on policy language requiring "prompt notice of the loss . . . [a]s soon as possible." (Dkt. No. 197-6 at 24.)

---

[8] Laches applies when a defendant establishes "(1) knowledge by plaintiff of facts constituting a cause of action or a reasonable opportunity to discover such facts; (2) unreasonable delay by plaintiff in commencing an action; and (3) damage to defendant resulting from the delay in bringing the action." *Davidson v. State*, 802 P.2d 1374, 1381 (Wash. 1991).

Plaintiff directs the Court to caselaw suggesting the requirements for each did not begin until the hidden damage was revealed through Amento's May 2019 intrusive inspection. (*See* Dkt. No. 254 at 26, 27) (citing *Greenlake Condo. Assn. v. Allstate Ins. Co.*, 2016 WL 4498239, slip op. at 3 (W.D. Wash. 2016)). But as discussed above, *see supra* Part II.B.1.b., PSIC offers evidence that Plaintiff was aware of damage before then (although its weight and whether it is sufficient to demonstrate knowledge of *systemic* damage is a jury question). Thus, this is a genuine issue of fact. Nevertheless, says Plaintiff, PSIC fails to put forth evidence of prejudice, (Dkt. No. 254 at 27), as is also required under Washington law, *see Mut. of Enumclaw Ins. Co. v. USF Ins. Co.*, 191 P.3d 866, 874 (Wash. 2008); *Cotton v. City of Elma,* 998 P.2d 339, 346 (Wash. Ct. App. 2000). But, as described above, the record contains evidence that damage occurred incrementally over many years. Thus, as Plaintiff is the movant here, the Court must infer that, had PSIC been provided notice earlier, the total loss would have been less. Summary judgment to Plaintiff is not warranted on defenses 16, 23, or 24.

#### iv.  Defense No. 20—Duties in Event of Loss

Affirmative defense number 20 broadly asserts that "Plaintiff's claims are barred . . . because Plaintiff failed to comply with PSIC's Policies' 'Duties in the Event of Loss or Damage' property loss conditions." (Dkt. No. 92 at 14.) Those duties include timely notice, as described above, along with other routine duties, such as allowing an inspection of the property and cooperating with PSIC's investigation. (*See* Dkt. No. 197-9 at 24–25.) PSIC presents no evidence (or even argument) that Plaintiff failed in those duties, other than the timely notice requirement discussed above. (*See generally* Dkt. No. 269.) Summary judgment to Plaintiff is therefore warranted on defense number 20 (except for the portion addressing timely notice).

#### v.  Defenses No. 7, 22—Fortuity & Loss in Progress

Affirmative defense number 22 asserts that "Plaintiff's claims are barred . . . to the extent Plaintiff was aware that the loss was . . . in progress prior to the inception of . . . the PSIC policies." (Dkt. No. 92 at 14.) And defense number 7 asserts that Plaintiff's claims are barred to the extent that they are "not fortuitous." (Dkt. No. 92 at 12.) PSIC's policies, like any all-risk

one, has an implicit fortuity requirement. *Churchill v. Factory Mut. Ins. Co.*, 234 F. Supp. 2d 1182, 1188 (W.D. Wash. 2002). Thus, for coverage to attach, widespread water infiltration could not have been present or foreseen at the time of contract formation. *Id.* at 1189.[9] Plaintiff contends that PSIC can put forth no evidence that Plaintiff was aware of widespread damage. (Dkt. No. 254 at 19–21.) However, this is belied by a year 2000 reserve study, describing deferred maintenance and instances of "rot extend[ing] into the wall framing." (Dkt. No. 257-2 at 7–8, 42–45.) This is sufficient to establish a genuine issue of fact. Summary judgment is not warranted to Plaintiff on defenses 7 or 22.

vi. Defense Nos. 32, 48—Misrepresentation/Concealment & Bad Faith

Affirmative defense number 32 asserts "Plaintiff's claims are barred . . . to the extent Plaintiff made any material misrepresentation(s) . . . or concealed [a material fact] . . . during the application process and/or at the time it submitted its claim(s)." (Dkt. No. 92 at 16). And defense 48 asserts that Plaintiff's claims are barred "to the extent [it] failed to comply with its statutory and/or general common law duty of good faith and fair dealing." (*Id.* at 18.) The former is based on policy language voiding the agreement "if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning . . . [a] claim under this policy." (Dkt. No. 257-16 at 55.) The latter is implied in all contracts. *Badgett v. Sec. State Bank*, 807 P.2d 356, 360 (Wash. 1991). Plaintiff contends PSIC can put forth no evidence supporting these claims. (Dkt. No. 254 at 16, 19.) But this is belied by the record, as repeatedly described above, which is sufficient to establish a genuine issue of fact. Summary judgment is not warranted to Plaintiff on defenses 32 or 48.

---

[9] "[W]hether a particular occurrence was expected by the insured before the insurance coverage was obtained . . . is a question of fact." *Pub. Util. Dist. No. 1 of Klickitat Cnty. v. Int'l Ins. Co.*, 881 P.2d 1020, 1030 (1994). However, under the "known loss" or "loss-in-progress" doctrine, an insurer must show the insured subjectively knew of a "substantial probability" the loss would occur at the time insurance was purchased. *Hillhaven Props. Ltd. v. Sellen Constr. Co.*, 948 P.2d 796, 799 (Wash. 1997).

vii. Defense No. 9—Failure to Mitigate

Finally, affirmative defense number 9 asserts that "Plaintiff's claims are barred . . . because Plaintiff failed to mitigate." (Dkt. No. 92 at 12.) Under Washington law, an injured party cannot recover damages it could have reasonably avoided. *See Affiliated FM Ins. Co. v. LTK Consulting Servs., Inc.,* 15 F. Supp. 3d 1116, 1129 (W.D. Wash. 2014) (citing *TransAlta Centralia Generation LLC v. Sicklesteel Cranes, Inc.*, 142 P.3d 209, 212 (Wash. Ct. App. 2006)). Plaintiff argues all available evidence suggests it proactively repaired and replaced siding as it identified deficiencies, and nothing shows it was aware of hidden damage prior to Amento's May 2019 inspection. (Dkt. No. 254 at 15.) But, as PSIC points out, there is some evidence that, in fact, Plaintiff was aware of latent damage prior to May 2019 and, regardless, it is undisputed that Plaintiff, since that time, has not addressed the issue, despite having almost $80 million in settlement funds to put towards that effort. (Dkt. No. 269 at 24–25.) This is sufficient to establish a genuine issue of fact as to mitigation. Summary judgment is not warranted to Plaintiff on defense number 9.

To summarize rulings on the defenses above, summary judgment is **GRANTED** to Plaintiff on PSIC's affirmative defense numbers 21 and 28 in total and 20 in part (as to duties *other than* timely notice) and **DENIED** as to defense numbers 7, 9, 16, 22, 23, 24, 25, 32, 46, 48.

C. **Extra-Contractual Claims**

In addition to breach of contract, the SAC brings causes of action based on violations of Washington's Consumer Protection Act, RCW 19.86.010 *et seq.* and Insurance Fair Conduct Act, RCW 48.30.010 *et seq.*, along with causes of action for bad faith and negligence. (Dkt. No. 84 at 8–11.) Each are based on the notion that PSIC's denial was, at best, not compliant with the standards of care of a Washington insurer and, at worst, unreasonable, frivolous, and/or unfounded.

Plaintiff previously moved for summary judgment on these claims, which the Court denied, finding genuine issues of fact existed on key issues. (*See* Dkt. No. 238 at 2–6.) Buoyed by that ruling, PSIC now seeks the inverse—summary judgment to it on Plaintiff's extra-

contractual claims. (*See* Dkt. 256 at 28–35.)  PSIC argues each claim fails as a matter of law, suggesting Plaintiff can point to no evidence that PSIC unreasonably interpreted and/or applied its policy provisions in denying coverage. (*Id.*) This is not accurate. Many genuine issues of fact exist.

One need look no further than PSIC's expert's reports and his testimony regarding insurance claim handling standards. (*See generally* Dkt. Nos. 272-3, 272-4, 272-5.) This evidence calls into question many of PSIC's practices, including the following: the reasonableness of its interpretation/application of policy language (such as the inverse efficient proximate cause language in light of the ensuing loss provision); the timeliness, adequacy, and fairness of its claim investigation (including coverage counsel's role); the manner in which it represented pertinent facts to Plaintiff; and how it maintained its claim file in this matter. (*Id.*)

Summary judgment is **DENIED** to PSIC on all extra-contractual claims.

### III.    CONCLUSION

For the foregoing reasons, the Court hereby ORDERS that:

(1) PSIC's motion for summary judgment (Dkt. No. 256) is **DENIED** in full.

(2) Plaintiff's motion for partial summary judgment (Dkt. No. 254) is **GRANTED** as to PSIC's affirmative defense number 20 (in part as described above), along with defense numbers 21, 28, 35, and 45 (in full). Those defenses, as well as defense numbers 6, 13, 14, 15, 17, 18, 29, 33, 34, 36, 38–40, 42, 43, 47, which PSIC withdrew in response to Plaintiff's motion, (Dkt. No. 269 at 29–30), are **DISMISSED**. PSIC's motion is **DENIED** as to all other defenses.

//
//
//
//
//
//

1   DATED this 22nd day of April 2025.

John C. Coughenour
UNITED STATES DISTRICT JUDGE